UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


TRUSTEES OF IBEW LOCAL NO. 7            )
PENSION FUND, TRUSTEES OF IBEW          )
LOCAL NO. 7 ANNUITY FUND, TRUSTEES      )
OF IBEW LOCAL NO. 7 APPRENTICESHIP      )
& TRAINING FUND, TRUSTEES OF IBEW       )
LOCAL NO. 7 LABOR MANAGEMENT            )
CORP. FUND, and IBEW LOCAL NO. 7,       )
              Plaintiffs,              )
                                       )
       v.                       ) C.A. No.
                                       ) 13-cv-30029-MAP
                                       )
DAW MAC SERVICE, CORP.,                 )
d/b/a DOUGLAS WHITE                     )
ELECTRICAL SERVICES,                    )
              Defendant.               )


**MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**
**(Dkt. Nos. 19 & 25)**

**September 15, 2014**

PONSOR, U.S.D.J.

      I.   <u>INTRODUCTION</u>

    Plaintiffs, trustees of the Local 7 Labor Funds, bring

this action pursuant to ERISA, 29 U.S.C. §§ 1132 and 1145,

and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §

185, to compel Defendant DAW MAC Service, Corp. ("DAW MAC"),

d/b/a Douglas White Electrical Services ("DWES"), to make

contributions and to remit employee payroll withholdings, as well as to submit monthly reports of the hours worked by each employee, as required under the collective bargaining agreement ("Agreement"). At issue is whether Defendant is bound to the Agreement as the alter ego of the signatory company, DWES, and therefore required to account for the contributions. Because the court concludes that DAW MAC is the alter ego of DWES, the court will deny Defendant's motion and allow Plaintiffs' motion for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiffs are the trustees of IBEW Local No. 7 Pension Fund, of IBEW Local No. 7 Annuity Fund, of IBEW Local No. 7 Apprenticeship and Training Fund, and of IBEW Local No. 7 Labor Management Cooperation Fund, as well as IBEW Local No. 7. Defendant DAW MAC d/b/a DWES is a Massachusetts corporation with its place of business in East Longmeadow, Massachusetts.

Douglas White owned and operated DWES as a sole proprietorship, which he ran out of his home in Somers, Connecticut. DWES filed its taxes under Mr. White's Social Security number. In March 2005, Mr. White hired Daniel A.

Renna as an apprentice electrician. Mr. Renna performed industrial, commercial, and residential electrical work under Mr. White's Master Electrician license for the entirety of his employment. Mr. Renna worked in this capacity until July 2010.

On December 30, 2005, Mr. White, on behalf of DWES, signed a Letter of Assent-A with the Western Massachusetts Chapter of the National Electrical Contractors Association ("NECA") and Local Union 7 for inside construction work. (Dkt. No. 22, Ex. 1.) By signing the letter, Mr. White agreed to comply with the Agreement, including the requirement that he pay into the Plaintiff Labor Funds. The letter was approved on January 5, 2006. The Letter of Assent-A also provided the manner in which a party could terminate the Agreement. In order to end its obligations, the signatory employer was required to give notice to the Western Massachusetts Chapter of the NECA 150 days prior to the anniversary of the applicable Agreement. It is undisputed that to date neither the union nor the Western Massachusetts Chapter of the NECA has received a notice of any intent to terminate the Letter of Assent-A. (Gour Aff.

¶ 8, Dkt. No. 29.)

In late 2005, DWES began experiencing financial difficulties and was nearing bankruptcy. On April 18, 2006, Mr. White and Mario Cardinale decided to create Defendant DAW MAC, with a business address in East Longmeadow, Massachusetts.[1] Mr. White and Mr. Cardinale were co-owners, each with a 50% interest in the company. Mr. Cardinale was Defendant's registered business agent and asserts that he had no knowledge of the Letter of Assent-A. (Cardinale Aff. ¶ 12, Dkt. No. 22, Ex. 2.) Defendant paid its quarterly federal taxes under the name of DAW MAC only. (Dkt. No. 22, Ex. 4 at 3.)

Mr. Renna avers that early in his employment, Mr. White informed him that his employer was DAW MAC d/b/a DWES. (Renna Aff. ¶ 4, Dkt. No. 28.) However, the terms and conditions of his employment were unaltered: Mr. White

---

[1] It does not appear from the record that DWES ceased its operations. Mr. White avers that his company was "struggling to find business and on the verge of bankruptcy" between December 2005 and April 2006, when he decided to open DAW MAC. (White Aff. ¶ 11, Dkt. No. 22.) However, the record reflects that DWES, to this day, maintains an active website on which it lists the same business address as Defendant. (Gour Aff. ¶ 19, Dkt. No. 29.)

4

continued to supervise and direct all of Mr. Renna's job duties. Mr. Renna also understood that Mr. Cardinale was part owner of Defendant. Mr. Renna worked out of the East Longmeadow shop, which had a sign outside with the words: "Douglas White Electrical Services." (Id. ¶ 8.) The van driven by Mr. Renna, as well as his work shirts and hats, all had the same business name on them -- that of DWES. (Id. ¶ 9.) When Mr. Renna received his earnings from Mr. White, the paycheck stated that it was from "DAWMAC Service Corp. d/b/a Douglas White Electrical Services." (Id. ¶ 10.) Finally, Mr. Renna claims that whenever the topic of unions came up, Mr. White told Mr. Renna to stay away from them. (Id. ¶ 12.)

On April 5, 2010, Mr. White signed a form for Mr. Renna's application with the Massachusetts State Examiners of Electricians for a journeyman electrician's license. On the form, Mr. White stated that Mr. Renna was employed by Defendant "d/b/a DWES." (Dkt. No. 28, Ex. 1 at 2.) After Mr. Renna obtained his journeyman electrician's license, he left his employment with Defendant. Mr. Renna went to the IBEW Local 7 office to inquire about work. There, he

learned that DWES was a signatory employer to the Agreement and that he should have been making significantly higher wages and been provided fringe benefits.  Mr. Renna is now a member of Local 7.

On November 17, 2011, Plaintiffs filed suit against Defendant in this court seeking to force an audit of Defendant's records (Civ. A. No. 11-30263-MAP).  On July 23, 2012, the case was voluntarily dismissed, and Defendant consented to an audit.  The payroll compliance review determined that Douglas White owed Plaintiffs $55,129.75 in delinquent, unpaid contributions for work performed by Mr. Renna between January 2009 and March 2011.  (Dkt. No. 22, Ex. 7 at 4.)  Defendant claims that, prior to November 2011, it had <u>no</u> previous contacts from the IBEW or Plaintiffs regarding any Agreement obligations or failure to pay into the funds.  Defendant also points out that the Payroll Compliance Review Report, conducted at the behest of Plaintiffs, lists as the employer "Douglas White," not Defendant.  (Dkt. No. 22, Ex. 7.)

On February 6, 2013, Plaintiffs filed this action seeking an order requiring Defendant to pay the delinquent

contributions assessed upon DWES. On December 20, 2013, Defendant filed a motion for summary judgment (Dkt. No. 19), and on January 23, 2014, Plaintiffs filed an opposition and cross-motion (Dkt. No. 25). On March 12, 2014, the court heard argument and took the matter under advisement.

### III. DISCUSSION

The court should grant summary judgment for the moving party where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential to affect the outcome of the case." Mass. Mut. Life Ins. Co. v. Fraidowitz, 360 F. Supp. 2d 243, 246 (2005) (D. Mass. 2005). Where, as here, both parties have moved for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

Defendant moved for summary judgment arguing, in

essence, that the obligations of DWES[2] were not the obligations of Defendant and that the alter ego doctrine is inapplicable.[3] Plaintiffs argue that, Defendant, by its own admission, is doing business as DWES and can be held liable for the fund payments. Alternatively, Plaintiffs assert that the alter ego doctrine does, in fact, apply to this situation.

Before discussing the flash point of the parties' dispute, the alter ego doctrine, the court will quickly address two other arguments of Plaintiffs. First, Plaintiffs argue that Defendant effectively concedes that it is bound by the union agreements. In response to the complaint's allegation that it "is and has been a party to a

---

[2] Defendant sometimes refers to the "obligations of Mr. White," however, for purposes of this memorandum, no substantive distinction can be drawn between the obligations of DWES and those of Mr. White.

[3] Defendant also contends that, pursuant to the single employer doctrine, the liabilities of DWES do not attach to Defendant because it is a distinct and separate entity. The single employment doctrine is used to determine if ostensibly separate entities really constitute a single employer. Torres-Negron v. Merck & Co. Inc., 488 F.3d 34, 40-1 (1st Cir. 2012). Plaintiffs do not address this particular argument. Accordingly, the court will confine its analysis to the alter ego doctrine.

collective bargaining agreement" with the union at all material times (Compl. ¶ 9, Dkt. No. 1), Defendant answers that it "neither admits nor denies the allegations" (Answer ¶ 9, Dkt. No. 5). Under the Fed. R. Civ. P. 8(b) pleading requirements, Defendant's failure to deny the fact alleged in ¶ 9, or state that it was without sufficient knowledge or information to answer, constitutes an admission. Rule 8(b)(5) & (6); Mahanor v. U.S., 192 F.2d 873, 876 (1st Cir. 1951) (deeming the defendant's answer in the form of "neither admits nor denies" to be an admission of the allegation in the complaint, since "obviously [the defendant] must have known whether she joined in executing the lease or not"). Second, Plaintiffs argue that, because Defendant admits that it is "d/b/a" DWES (Compl. ¶ 7, Dkt. No. 1; Answer ¶ 7, Dkt. No. 5.), it is bound as a matter of law to the Letter of Assent-A and, consequently, the Agreement. Courts have recognized that the designation "d/b/a" does not work to create a distinct business entity and separate the liabilities of the names on either side of the "d/b/a." Trustees of the Mason Tenders v. Faulkner, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007).

Defendant opposes a finding of liability on either of these somewhat technical points, but its arguments are weak. In the end, the court need not anchor its decision on either of these arguments, however, since the Plaintiffs' more substantive argument regarding the application of the alter ego doctrine so clearly entitles them to judgment.

The alter ego doctrine, developed under National Labor Relations Act ("NLRA") jurisprudence, applies to "prevent employers from evading their obligations under labor laws and collective bargaining agreements" through the artifice of successor or parallel companies. Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1998) ("MCCCA") (finding the alter ego doctrine applicable in cases brought pursuant to ERISA). This purpose is equally served in the ERISA context: employers who dodge their pension and trust fund obligations gain an unfair advantage in the marketplace. Id. at 308. Accordingly, the application of the alter ego doctrine to two ostensibly separate companies will bind a nonsignatory company to a collective bargaining agreement between the union and the signatory company. Id.

In determining whether the alter ego doctrine applies, a court must consider several factors: "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus – i.e., whether the alleged alter ego entity was created and maintained in order to avoid labor obligations." Id. (internal quotations omitted). The alter ego doctrine may apply even if every element is not present, as none of the elements is controlling or essential. C.E.K. Indus. Mech. Contractors, Inc. v. N.L.R.B., 921 F.2d 350, 354 (1st Cir. 1997).

The prototypical application of the alter ego doctrine occurs where a second company is created by the owners of the first company for the purpose of evading responsibilities incurred through a collective bargaining agreement. N.L.R.B. v. Hosp. San Rafael, Inc., 42 F.3d 45, 50 (1st Cir. 1994). However, the presence of a wrongful motive, or anti-union bias, is not required for application of the doctrine. Id. at 51. On the other hand, where evidence shows that the purpose of the second entity is to

avoid labor law obligations, "the court reasonably need give less weight to the other 'identity' criteria."  Id. at 51.  Conversely, where there is no conclusive evidence of anti-union sentiment, the presence of the other factors must be more substantial to support the application of the alter ego doctrine.

In MCCCA, the First Circuit addressed the application of this doctrine where a multiemployer pension fund sued a nonsignatory company for failure to make contributions, contending that the defendant was the alter ego of a signatory to the collective bargaining agreement.  The Court of Appeals determined that, though there was no conclusive evidence supporting the existence of anti-union sentiment, the other factors supported the determination that one company was the alter ego of the other.  Id. at 309.  Specifically, both companies were owned by members of the same family; both companies were in same line of business and serving the same clients; their offices were in the same building; the companies shared managers, supervisors, and employees; and they shared equipment through an informal leasing arrangement.

MCCCA controls the outcome in this case, making clear that the alter ego doctrine should apply to DWES and DAW MAC.  As an initial matter, the factors of continuity of ownership, management, and supervision powerfully support this conclusion.  It is true that DWES was owned and operated as a sole proprietorship by Mr. White, while DAW MAC was co-owned and operated by Mr. White and Mr. Cardinale jointly.  It is also true that Mr. Cardinale was not simply an owner and manager on paper; the evidence shows that he served as both director and treasurer of the corporation and invested time and "sweat equity" into improving the business.  Nonetheless, the sole proprietor of DWES owned half of DAW MAC.  Likewise, the management of the two companies remained substantially the same, and the supervision of the one employee remained exactly the same.  Although there is not complete identity of ownership, management, and supervision, enough of an overlap exists to tilt these factors against Defendant.

Furthermore, there is similarity, indeed identity, of business purposes and customers: DAW MAC and DWES provide the same electrical services for industrial, commercial, and

residential contract work.  From the perspective of their customers, the two companies are identical, as the website for DWES lists the same address as Defendant and the primary employee performing the work for Defendant does so in a DWES uniform.

Finally, there is similarity of operations and equipment: DAW MAC used the "DWES" name on its equipment, on its offices and advertising, and on its sign and truck. Defendant contends that Mr. Renna's impressions of the similarities between the two companies should carry little weight.  The fact that Mr. Renna had little interaction with Mr. Cardinale is not indicative of the amount of sales, managerial, or financial work performed on behalf of DAW MAC by Mr. Cardinale.  However, Defendant's arguments are not sufficient to tip the scale in its favor on these factors because, for the public and Defendant's employee, all indicia of ownership and operations show only that Defendant was DWES.

With respect to the presence of anti-union sentiment, the evidence before the court is less conclusive.  There is some evidence that Mr. White kept hidden from Mr. Renna the

fact that DWES signed the Letter of Assent-A, binding it to the collective bargaining agreement, and told Mr. Renna to stay away from unions. Defendant counters, however, that it is undisputed that DAW MAC came into existence solely because DWES was failing financially. Defendant further argues that the alter ego doctrine is "a tool to be employed when the corporate shield, if respected, would inequitably prevent a party from receiving what is otherwise due and owing from the person or persons who have created the shield." Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc., 343 F.3d 18, 21 (1st Cir. 2003) (upholding district court's refusal to apply the alter ego doctrine where the defendant company had never been a union shop and the second, later company started by defendant's principals, was established as a defendant-affiliated unionized contractor) (emphasis in original). Because DAW MAC was born out of financial necessity -- and not as a way of evading union obligations -- the application of the alter ego doctrine is inapposite, according to Defendant.

As "a finding of anti-union animus is not essential to sustain a finding that the companies are alter egos," its

absence will not defeat application of the doctrine here. Id. Moreover, because every other factor favors Plaintiffs' position, Mr. Cardinale's financial interest and participation in Defendant is insufficient to tip the balance away from application of the alter ego doctrine. For all these reasons, the court must conclude that Defendant is the alter ego of DWES and should be bound to the obligations assumed by DWES in signing the Letter of Assent-A.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 19) is hereby DENIED and Plaintiffs' Cross-Motion for Summary Judgment (Dkt. No. 25) is hereby ALLOWED. The clerk will set this case for a status conference to determine the nature and scope of the remedy Plaintiffs are entitled to.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge